UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 13-61466-CIV-MIDDLEBROOKS

RYDER SYSTEM, INC.,

    Plaintiff,

vs.

STORAGE & MOVING SERVICES, INC.,
d/b/a RYDER MOVING AND STORAGE,

    Defendant.
_____/

## ORDER ON PLAINTIFF'S EMERGENCY MOTION FOR PRELIMINARY INJUNCTION

THIS CAUSE comes before the Court upon Plaintiff Ryder System, Inc.'s ("Plaintiff") Emergency Motion for Preliminary Injunction (DE 6) ("Motion"), filed July 8, 2013. Pursuant to the Motion and Plaintiff's Request for Hearing (DE 7), I set a hearing for July 25, 2013, and required Plaintiff to immediately serve the Court's Order (DE 8) on Defendant Storage & Moving Services, Inc. d/b/a Ryder Moving and Storage ("Defendant").[1] I also required Defendant to respond to Plaintiff's Motion by July 19, 2013. Defendant failed to respond or otherwise appear by the July 19th deadline, and the Court conducted the hearing as scheduled with only Plaintiff present.[2] I have considered Plaintiff's Motion and all declarations and exhibits attached thereto, as well as the evidence and argument presented at the July 25th hearing, and I am otherwise advised in the premises.

---

[1] Pursuant to the Order, Plaintiff filed proof that service was effectuated on July 9, 2013. (*See* DEs 10, 12).

[2] At the hearing, Plaintiff's counsel averred that Defendant contacted Plaintiff's counsel by e-mail, thereby indicating that Defendant had notice of the hearing. Plaintiff's counsel attempted to contact Defendant several times by telephone on the morning of the hearing, but to no avail. Nevertheless, Defendants appear to have been properly served.

1

On July 8, 2013, Plaintiff filed suit against Defendant, bringing the following claims: (1) trademark infringement under the Lanham Act, 15 U.S.C. § 1114(1) (Count I); (2) false designation of origin and unfair competition under the Lanham Act, 15 U.S.C. § 1125(a) (Count II); (3) trademark dilution under the Lanham Act, 15 U.S.C. § 1125(c) (Count III); (4) violation of the cyberpiracy provisions of the Lanham Act, 15 U.S.C. § 1125(d) (Count IV); (5) violation of the Florida anti-dilution statute, Fla. Stat. § 495.151 (Count V); and (6) violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201, *et seq.* ("FDUTPA") (Count VI). Plaintiff's Complaint seeks injunctive relief and damages stemming from Defendant's alleged trademark infringement and unfair competition violations.

In the instant Motion, Plaintiff requests that the Court issue a preliminary injunction pending trial pursuant to Federal Rule of Civil Procedure 65 that precludes Defendant (including but not limited to Defendant's officers, Joshua Socher, Jodi Socher, and Jose Pino) from: (1) operating any moving or transportation business using the name "Ryder"; (2) operating any business using trademarks, or any colorable imitation of same, registered to Plaintiff; (3) operating or using in any way the website located at "www.rydermovingandstorage.com"; and (4) publishing, distributing, or using in any way marketing, sales, or promotional materials bearing the name "Ryder." (DE 6 at 1).

For the reasons set forth below, Plaintiff's Emergency Motion for Preliminary Injunction is GRANTED.

## **FINDINGS OF FACT**

After reviewing Plaintiff's Complaint, Plaintiff's Emergency Motion for Preliminary Injunction and supporting evidentiary submissions, and on the evidence introduced at the July 25th hearing on Plaintiff's Motion, the Court hereby makes the following findings of fact.

Plaintiff is a Fortune 500 global transportation company in the business of, among other things, commercial truck leasing, rental and maintenance, and supply chain logistics. (Rabideau-Putnam Aff. at ¶ 5). Many of Plaintiff's customers rent or lease commercial trucks to move residential furnishings. (Id.). Plaintiff is the owner of the service mark "RYDER" for use in connection with the following: (1) leasing and renting vehicles (U.S. Reg. 1123006), which was first used in commerce in 1935 and registered with the United States Patent and Trademark Office ("USPTO") in 1979; (2) comprehensive logistics services for customers with national and international shipping requirements (U.S. Reg. 2008202), which was first used in commerce in 1964 and registered with the USPTO in 1996; and (3) freight transportation services by van and trucks (U.S. Reg. 1575603), which was first used in commerce in 1985 and registered with the USPTO in 1990. (Alvarez-Ulloa Aff. at ¶¶ 6-8 and Composite Exhibit A). Plaintiff also owns the service mark "RYDER" and accompanying design for use in connection with the leasing and renting of truck vehicles, and comprehensive logistics services for customers with national and international shipping requirements (U.S. Reg. 2155446), which was first used in commerce in 1997 and registered with the USPTO in 1998. (Id. at ¶ 9, Composite Exhibit A). Plaintiff is the exclusive owner of the RYDER Marks, has the exclusive rights to use and license the RYDER Marks, and has used the Ryder Marks continuously in commerce both before and since the registrations of the RYDER Marks. (Id. at ¶ 10).

Plaintiff's witness, Natalie Rabideau-Putnam, Vice President of Marketing for Ryder Fleet Management Solutions testified at the hearing. She works closely with Plaintiff's use of its logos, trade name, branding, marketing to the public, and its reputation within the transportation industry. Apparently, Plaintiff spends in excess of $8 million annually to market and promote its business, including the Ryder name and the RYDER Marks. As a result of these substantial

3

expenditures and Plaintiff's promotional and marketing activities, the vehicle leasing and rental, shipping logistics, and freight transportation services offered and sold under the Ryder name and RYDER Marks are widely known and recognized by the public as emanating from Plaintiff. Moreover, Plaintiff's advertising and promotional efforts have been successful and have resulted in the Ryder name and the RYDER Marks becoming extremely well known in the transportation industries, and throughout the State of Florida and the United States. (Rabideau-Putnam Aff. at ¶ 7).

Defendant was formed as a Florida corporation in June 2011. (*Id.* at ¶ 15 and Composite Exhibit D). Defendant is in the business of transporting its customers' household furnishings within Florida and throughout the United States; that is, Defendant is a "moving company." (*Id.* at Composite Exhibit C).

In May 2012, Defendant registered the fictitious name "Ryder Moving and Storage" with the Florida Department of State Division of Corporations. (*Id.* at ¶ 15 and Composite Exhibit D). Also in May 2012, the internet domain name "www.rydermovingandstorage.com" (the "Domain Name") was created, which Defendant uses as the internet address for its website (the "Website"). (*Id.* at ¶ 14 and Composite Exhibit C). Neither "Ryder Moving and Storage" nor the Website is connected in any way with, or operated by, Ryder. (*Id.* at ¶ 14). Further, the evidence and testimony indicate that Defendant, through the Website and other interactions with potential customers, holds itself out as Plaintiff, or an affiliate of Plaintiff, in order to deceive potential customers into hiring Defendant based upon the mistaken belief that Defendant is the true Ryder company. (*Id.* at ¶¶ 11-12, 14-15 and Composite Exhibits A, C and D; Schwandt Decl. at ¶¶ 4-22).

Defendant's fictitious business name "Ryder Moving and Storage" incorporates the Ryder name and a RYDER Mark, as does the Domain Name. (Rabideau-Putnam Aff. at ¶¶ 14-15 and Composite Exhibits C and D). The Website prominently displays a RYDER Mark at the top of each of the Website's pages in bold, red letters. (*Id.* at ¶ 14 and Composite Exhibit C). The Website also features the picture of a semi-truck and trailer with "Ryder" apparently stenciled or painted on the side in large, bold, red lettering. (*Id.* at ¶ 14 and Composite Exhibit C). Nowhere on the Website does Defendant notify the public that Defendant and its Website are not associated in any way with Plaintiff. (*Id.* at Composite Exhibit C).[3]

Actual confusion in the marketplace between Defendant, doing business as "Ryder Moving and Storage," and Plaintiff has occurred. (*Id.* at ¶ 10; Schwandt Decl. at ¶¶ 6-10, 22). At the hearing, one of Defendant's customers, Joshua Schwandt, testified that he hired Defendant, thinking that it was the household name transport company, Ryder. Mr. Schwandt provided the Court with a photograph of Defendant's moving truck, which prominently displayed the RYDER Marks. Mr. Schwandt's experience with Defendant turned moving day – an already stressful experience – into a disaster. Defendant arrived a day late, the movers were extremely rude, Mr. Schwandt was charged more than the original quote, and he was not able to retrieve his belongings until several weeks after he was promised delivery.

Plaintiff's witness, Olga Alvarez-Ulloa,[4] as well as Ms. Rabideau-Putnam, testified that several of Defendant's customers have contacted Plaintiff to lodge complaints about Defendant's services, including the failure to deliver furnishings, damage to customers' property, rude and

---

[3] Regardless of who actually registered the Domain Name, Defendant appears to be using the Domain Name. This use is sufficient to establish Defendant's violation of the cyberpiracy provisions of the Lanham Act (Count IV). *See* 15 U.S.C. § 1125(d); (Putnam Aff. at ¶ 14 and Composite Exhibit C).

[4] Ms. Alvarez-Ulloa is a paralegal who has worked for Plaintiff for over ten years. Her duties include managing the renewals and registrations of Ryder's trademarks and service marks.

5

offensive behavior by employees and representatives of Defendant, property being handled by third-party movers despite Defendant's assurances that no such companies would be used, and customers being required to pay additional money after their property had been loaded onto a truck. (*Id.* at ¶¶ 11-12 and Composite Exhibit A). Additionally, multiple negative reviews about "Ryder Moving and Storage" have been posted to the internet. These reviews often refer to the company as just "Ryder," and include reports of furniture never arriving, significant additional costs added after furniture is loaded onto a truck, missing items, damaged items, and overall unprofessional and unethical business practices. (*Id.* at ¶ 13 and Composite Exhibit B).[5]

## CONCLUSIONS OF LAW

I. Legal Standard

The Lanham Act expressly authorizes injunctive relief in cases of trademark infringement and unfair competition. 15 U.S.C. § 1116(a). To obtain a preliminary injunction, the movant must show: (1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) the injunction, if issued, would not be adverse to the public interest. *See Four Seasons Hotels & Resorts, B.V. v. Consorcio Barr, S.A.*, 320 F.3d 1205, 1210 (11th Cir. 2003) [hereinafter *Four Seasons*]; *CBS Broadcasting, Inc. v. EchoStar Commc'ns Corp.*, 265 F.3d 1193, 1200 (11th Cir. 2001); *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998); *accord Nitro Leisure Prods., L.L.C. v. Acushnet Co.*, 341 F.3d 1356, 1359 (Fed. Cir. 2003) (applying Eleventh Circuit law to a trademark infringement and dilution case). "A preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly established the

---

[5] At the hearing, Plaintiff's counsel indicated that Plaintiff is receiving complaints from Defendant's customers on an ongoing basis, even as recently as the morning of the hearing.

6

'burden of persuasion' as to all four elements." *Davidoff & Cie, S.A. v. PLD Int'l Corp.*, 263 F.3d 1297, 1300 (11th Cir. 2001) (quoting *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (*en banc*)).

II. <u>Analysis</u>

As a preliminary matter, I note that "[a]n evidentiary hearing is not always required before issuance of a preliminary injunction," *All Care Nursing Serv., Inc. v. Bethesda Mem'l Hosp., Inc.*, 887 F.2d 1535, 1538 (11th Cir. 1989), and this is particularly true in cases in which irreparable injury is presumed, *McDonald's Corp.*, 147 F.3d at 1313-14. Where the non-moving party does not deny the moving party's factual allegations or does not offer any contradictory evidence, an evidentiary hearing is not necessary. *McDonald's Corp.*, 147 F.3d at 1308. Instead, it is only those cases "where facts are bitterly contested and credibility determinations must be made to decide whether injunctive relief should issue, [that] an evidentiary hearing must be held." *Id.* at 1312; *see also All Care Nursing*, 887 F.2d at 1539 ("[Where] conflicting affidavits place in serious dispute issues central to [a party's] claims . . . [and] where much depends upon the accurate presentation of numerous facts, the trial court err[s] in not holding an evidentiary hearing to resolve these hotly contested issues."). Defendant has not challenged Plaintiff allegations, neither through oral argument and testimony at the July 25th hearing, nor through paper filings with the Court, and in fact has not even responded to this Court's Order that appears to have been properly served on its registered agent. While an evidentiary hearing may not have even been necessary in this matter, one was held in the interest of prudence to give Defendant every opportunity to contest Plaintiff's factual assertions.

A. *Likelihood of Success on the Merits*

In order to obtain a preliminary injunction, the first element Plaintiff must prove is that

there is a substantial likelihood of it prevailing on the merits of its claims at trial. *Four Seasons*, 320 F.3d at 1210.

Under Section 32 of the Lanham Act, a person is liable for trademark infringement for:

> use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive[.]

15 U.S.C. § 1114(1)(a). In order to succeed on the merits of a trademark infringement claim under this section of the Lanham Act, a plaintiff must show that the defendant used the mark in commerce without its consent and "that the unauthorized use was likely to deceive, cause confusion, or result in mistake." *Davidoff & Cie*, 263 F.3d at 1300-01 (quoting *McDonald's Corp.*, 147 F.3d at 1307).

Plaintiff owns at least four federal trademark registrations which cover the RYDER Marks: U.S. Trademark Registration Nos. 1123006, 2008202, 1575603, and 2155446 (collectively the "Registrations"), certified copies of which were introduced into evidence at the hearing on Plaintiff's Motion. (Alvarez-Ulloa Aff. at ¶¶ 5-9 and Composite Exhibit A). The Registrations are prima facie evidence of (i) the registrations, (ii) validity of the registered marks, (iii) Plaintiff's ownership of the marks, and (iv) Plaintiff's exclusive right to use the registered marks in commerce. *See* 15 U.S.C. § 1115(a). Further, Plaintiff has established that Defendant is using the RYDER Marks in commerce without Plaintiff's consent. (Rabideau-Putnam Aff. at ¶¶ 14-15 and Composite Exhibits C and D; Schwandt Decl. at ¶¶ 5-10; Alvarez-Ulloa Aff. at ¶ 11).

The Eleventh Circuit considers the following seven factors in determining the likelihood of confusion between a plaintiff's mark and the mark being used by the defendant: (1) the strength of the plaintiff's mark; (2) the similarity between the two marks; (3) the similarity of the

product or service; (4) the similarity of the sales methods; (5) the similarity of advertising methods; (6) the defendant's intent in using a trademark that is similar to the plaintiff's trademark; and (7) consumers' actual confusion. *Montana Prof'l Sports, LLC v. Leisure Sports Mgmt., Inc.*, 422 F. Supp. 2d 1271, 1278 (M.D. Fla. 2006); *Breakers of Palm Beach, Inc. v. Int'l Beach Hotel Dev., Inc.*, 824 F. Supp. 1576, 1582 (S.D. Fla. 1993) (citing *Univ. of Ga. Athletic Assoc. v. Laite*, 756 F.2d 1535, 1542 (11th Cir. 1985)). These factors "are not rigidly weighed and are merely a guide for the Court to focus on the basic question: likelihood of confusion." *Montana Prof'l Sports*, 422 F. Supp. 2d at 1278 (citing *Laite*, 756 F.2d at 1542). Plaintiff has satisfied its burden to show that the above factors weigh in favor of finding a likelihood of confusion.

### 1) Strength of the Trademark

In determining the strength of Plaintiff's mark, there are four categories of distinctiveness, listed in descending order of strength: (1) fanciful or arbitrary, (2) suggestive, (3) descriptive, and (4) generic. *See St. Luke's Cataract and Laser Inst., P.A. v. Sanderson*, 573 F.3d 1186, 1209 (11th Cir. 2009). I find that the RYDER Marks are fanciful or arbitrary when applied to the goods and services at issue, namely, moving and storing supplies and services, because the Marks do not describe or suggest anything about those goods or services. *See Montana Prof'l Sports*, 422 F. Supp. 2d at 1278. Therefore, the RYDER Marks are entitled to the broadest protection.[6]

### 2) Similarity of the Marks

With regard to the similarity between the marks, Defendant's name, "Ryder Moving and Storage," is not just similar to the RYDER Marks, its first word is *identical* to the RYDER

---

[6] If the RYDER Marks are in any way suggestive of transportation-related services, it is due to Ryder's brand recognition and the strength of its Marks.

9

Marks. Defendant uses the RYDER Marks in its business name and its advertising materials. (Rabideau-Putnam Aff. at ¶¶ 14-15 and Composite Exhibits C and D). Defendant's addition of the words "Moving and Storage" to Ryder does not mitigate against its infringement of the RYDER Mark. Further, Defendant's Domain Name is made up of the RYDER Mark, with the additional words, "movingandstorage.com." (Alvarez Aff. at ¶ 14 and Composite Exhibit C; Complaint at ¶ 16). Just as Defendant's use of the "Ryder Moving and Storage" name constitutes infringement of the RYDER Marks, Defendant's use of the Domain Name "www.rydermovingandstorage.com" is identical, confusingly similar, and dilutive of the RYDER Marks.

### 3) Similarity of the Services

With regard to the similarity of services offered, Defendant offers nearly identical – albeit on a smaller scale – services to those of Plaintiff.[7] Even though Plaintiff is not in the specific business of packing a customer's furnishings and having its employees physically load and unload them from its trucks, the businesses of the parties are sufficiently related that it is natural for the public to assume – indeed, the public has assumed – that Ryder is the sponsor of or affiliated with Defendant's business. (Rabideau-Putnam Aff. at ¶ 10; Schwandt Decl. at ¶¶ 6-10, 22).

### 4) Defendant's Intent

Plaintiff has also shown that Defendant has the intent to use the name "Ryder" in order to falsely associate itself with Plaintiff and to derive benefit from Plaintiff's reputation. This alone can justify a finding of likelihood of confusion. *See Bellsouth Adver. & Publ'g Corp. v. Real*

---

[7] Plaintiff offers transportation services throughout the United States, including renting trucks for use in moving residential furnishings. (*Id.* at ¶ 5). Defendant is in the business of transporting customers' household furnishings within Florida and throughout the United States. (*Id.* ¶ 14 and Composite Exhibit C; Schwandt Decl. at ¶¶ 4-10).

10

*Color Pages, Inc.*, 792 F. Supp. 775, 783 (M.D. Fla. 1991) (citing *AmBrit, Inc. v. Kraft, Inc.*, 812 F.2d 1531, 1542 (11th Cir. 1986)) ("A finding that Defendants infringed upon Plaintiff's trademarks with the intent of deriving benefit from Plaintiff's reputation may alone be enough to justify the inference that there is confusing similarity."); *accord Babbit Elecs., Inc. v. Dynascan Corp.*, 38 F.3d 1161, 1179 (11th Cir. 1994) ("In fact, a likelihood of confusion can be found as a matter of law if the defendant intended to derive benefit from the plaintiff's trademark.").

     5)    <u>Actual Confusion</u>

Last, actual confusion – while not necessary to my finding of likelihood of confusion – has been said to be the best evidence of such. See *Frehling Enters., Inc. v. Int'l Select Grp., Inc.*, 192 F.3d 1330, 1340 (11th Cir. 1999). Actual confusion by a few is evidence of likelihood of confusion by many. *Freedom Sav. & Loan Ass'n v. Way*, 757 F.2d 1176, 1185 (11th Cir. 1985).

In this case, there is no doubt that there has been actual confusion. The evidence shows that there have been several instances of consumers' actual confusion. (Rabideau-Putnam Aff. at ¶¶ 10-11 and Composite Exhibit A; Schwandt Decl. at ¶¶ 6-10, 22). Indeed, one customer attested at the hearing to his personal confusion.

Accordingly, Plaintiff has met its burden to demonstrate a substantial likelihood of success on the merits of its first Lanham Act claim at trial. Having found that that there is a substantial likelihood of success as to Count I, addressing the likelihood of success with regard to the remaining Counts is not necessary, and the Court declines to do so here.

    B.    *Irreparable Harm*

The second factor the court must consider when evaluating a request for a preliminary injunction is whether there has been a showing of irreparable harm. It is well established that a showing of likelihood of confusion is adequate, by itself, to constitute irreparable harm. *See*

*Ferrellgas Partners, LP v. Barrow*, 143 F. App'x 180, 191 (11th Cir. 2005) (citing *McDonald's Corp.*, 147 F.3d at 1310); *E. Remy Martin & Co. v. Shaw-Ross Int'l Imports*, 756 F.2d 1525, 1530 (11th Cir. 1985). In other words, "upon a showing of likelihood of confusion, irreparable injury is established as a matter of law." *Nailtiques Cosmetic Corp. v. Salon Scis., Corp.*, 1997 WL 244746, at *5 (S.D. Fla. Jan. 10, 1997); *see also Laboratorios Roldan c. por A. v. Tex Int'l, Inc.*, 902 F. Supp. 1555, 1570 (S.D. Fla. 1995) (noting that "likelihood of confusion constitutes irreparable injury"); *Burger King Corp. v. Lee*, 766 F. Supp. 1149, 1157 (S.D. Fla. 1991) ("The existence of a likelihood of confusion constitutes irreparable injury as a matter of law sufficient to satisfy the requirements of Fed. R. Civ. P. 65.").

Thus, having already found that Plaintiff is likely to prevail on the merits of its trademark infringement claim by establishing a likelihood of confusion, it follows that Plaintiff has established that its injury is irreparable in nature, absent an injunction. Since Plaintiff's services include transportation for moving, Plaintiff stands to be significantly harmed by Defendant's misappropriation of the RYDER Marks, and deceitful acts, such as insinuating a relationship between both companies when there is none, would likely be devastating to Plaintiff's reputation and business. This is especially true given Defendant's poor customer reviews posted to the internet and also received by Plaintiff. Accordingly, I find that Plaintiff has satisfied the irreparable injury prong for the issuance of a preliminary injunction.

C.  *Balance of Hardships*

Third, this Court must consider whether the injury to Plaintiff outweighs the harm a preliminary injunction may cause to Defendant. As set forth above, Plaintiff will suffer irreparable harm absent injunctive relief. By contrast, Defendant will not suffer any harm, because it has no legitimate interest in the RYDER Marks, or in their false statements suggesting

a business affiliation with Plaintiff. *See Laboratorios Roldan, C. por A*, 902 F. Supp. at 1571; *Nailtiques Cosmetic Corp.*, 1997 WL 244746, at *5 ("Defendants should not be heard to complain about hardship when their actions, undertaken with apparent prior knowledge of Plaintiff's trademarks . . . , imply bad faith."). Additionally, Plaintiff is not seeking to preclude Defendant from advertising and engaging in the moving and transportation business without using the Ryder name and RYDER Marks. Thus, in this case, the balance of the equities weighs heavily in favor of granting Plaintiff's request for preliminary injunctive relief.

D. *Public Interest*

Finally, under the facts of this case, it is indisputable that a preliminary injunction will serve the public interest. "In a trademark infringement or unfair competition case, a third party, the consuming public, is present and its interests are paramount." *BellSouth Adver. & Publ'g Corp. v. Real Color Pages, Inc.*, 792 F. Supp. 775, 785 (M.D. Fla. 1991). "The public is entitled to be free from deception and confusion." *Laboratorios Roldan, C. por A*, 902 F. Supp. at 1571. By putting an immediate end to Defendants' deceptive practices that have misled, confused, and victimized consumers like Mr. Schwandt, injunctive relief will serve the public interest. *See id.*; *BellSouth*, 792 F. Supp. at 785; *Teledyne Indus., Inc. v. Windmere Prods., Inc.*, 433 F. Supp. 710, 740 (S.D. Fla. 1977) ("[C]ustomer confusion is by its very nature against the public interest."). Furthermore, while the public interest favors protecting the consumer, it also protects "the businessman who has striven to develop his goodwill[.]" *Polo Fashions, Inc. v. Rabanne*, 661 F. Supp. 89, 96 (S.D. Fla. 1986). Plaintiff has established that a preliminary injunction will serve the public interest. For this reason, and all those stated above, Plaintiff has met its burden for the issuance of a preliminary injunction, and I will grant Plaintiff's Motion.

## INJUNCTION BOND

Federal Rule of Civil Procedure 65(c) provides that this Court may only issue a preliminary injunction "if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). The evidence is clear that Defendant holds itself out as Plaintiff, or an affiliate of Plaintiff, which deceives customers into hiring Defendant based on the mistaken belief that Defendant is the true Ryder company. The evidence also shows that Defendant displays the RYDER Marks on its Website and in email communications with potential customers, makes oral assurances to potential customers that it is the actual Ryder company, and sends seemingly authentic Ryder trucks that prominently display the RYDER Marks to transport its customers' belongings. The requested restraint would only protect Plaintiff's rights and would not harm Defendant. Accordingly, the requisite bond is set at $5,000.00; however, this injunction shall take immediate effect and Plaintiff will have two (2) days to post the bond.

## CONCLUSION

Upon review of Plaintiff's Complaint, Plaintiff's Emergency Motion for Preliminary Injunction, and supporting evidentiary submissions, and on the evidence introduced at the July 25th hearing on Plaintiff's Motion, it is hereby **ORDERED AND ADJUDGED** as follows:

1. Plaintiff's Emergency Motion for Preliminary Injunction (DE 6) is **GRANTED**. Effective immediately, Defendant and all persons acting in active concert and participation with Defendant[8] are precluded from:

    a. Operating any moving or transportation business using the name "Ryder";

---

[8] This includes, but is not limited to, Defendant's officers, Joshua Socher, Jodi Socher, and Jose Pino.

   b. Operating any business using trademarks, or any colorable imitation of same, registered to Plaintiff;

   c. Operating or using in any way the website located at "www.rydermovingandstorage.com"; and

   d. Publishing, distributing, or using in any way marketing, sales, or promotional materials bearing the name "Ryder."

2. Within 24 hours of the entry of this Order, Plaintiff shall effectuate service of this Order on Defendant;

3. Within 48 hours of the entry of this Order, Defendant shall remove from the website located at "www.rydermovingandstorage.com," and any other website operated or controlled by Defendant, all text and images stating or displaying the term "Ryder";

4. Within ten (10) days of the entry of this Order, Defendant shall file with the Court a written report by Defendant under oath setting forth in detail the manner in which Defendants have complied with this preliminary injunction;

5. Within two (2) days, Plaintiff shall post a security bond of **$5,000** for the duration of this preliminary injunction; and

6. The Court shall reserve ruling on the issue of awarding attorneys' fees and costs incurred by Plaintiff for the bringing of the Motion, and the determination of whether this is an exceptional case under 15 U.S.C. § 1117(a).

It is further hereby

**ORDERED AND ADJUDGED** that Plaintiff's Motion for Entry of Unopposed Preliminary Injunction (DE 14) is **DENIED** as moot.

**DONE AND ORDERED** in Chambers at West Palm Beach, Florida, this 25 day of July, 2013.

_____
DONALD M. MIDDLEBROOKS
UNITED STATES DISTRICT JUDGE

Copies to:    Counsel of Record